TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 17-903 |
|  | : |  |
| of | : | October 25, 2018 |
|  | : |  |
| XAVIER BECERRA | : |  |
| Attorney General | : |  |
|  | : |  |
| MANUEL M. MEDEIROS | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

_____

THE HONORABLE STACEY SIMON, MONO COUNTY COUNSEL, has requested an opinion on the following question:

May a member of the Southern Mono Healthcare District board of directors simultaneously serve as a member of the city council for the Town of Mammoth Lakes or on the city's Planning and Economic Development Commission?

CONCLUSION

A member of the Southern Mono Healthcare District board of directors may not simultaneously serve as a member of the city council for the Town of Mammoth Lakes or on the Mammoth Lakes Planning and Economic Development Commission.

1

17-903

ANALYSIS

The Southern Mono Healthcare District (District) is a special district organized pursuant to the Local Healthcare District Law,[1] which authorizes health care districts to establish, maintain, and operate health facilities within their territorial limits.[2]  The District operates a hospital and a medical clinic within the Town of Mammoth Lakes (hereafter, City).[3]  Mammoth Lakes is a general law city governed by a city council comprising five elected members.[4]  The City's Planning and Economic Development Commission (Planning Commission) consists of five members appointed by the City council.[5]

We are asked whether an individual who is a member of the District's board of directors may simultaneously serve as a member of the City council or the Planning Commission—that is, whether such simultaneous service violates the prohibition against holding incompatible offices.  We conclude that it does.

The doctrine of incompatible offices prohibits an individual from simultaneously holding two public offices if the performance of the duties of either office could have a significant adverse effect on the other.[6]  "The doctrine springs from considerations of

---

[1] Health & Saf. Code, § 32000 et seq.  For purposes of the Local Healthcare District Law, the terms "hospital district" and "health care district" are synonymous.  (Health & Saf. Code, § 32000.1, subd. (a).)

[2] Health & Saf. Code § 32121, subds. (j), (m); 88 Ops.Cal.Atty.Gen. 213, 213 (2005).

[3] See Mono County Local Agency Formation Com., *Municipal Service Review and Sphere of Influence Recommendation:  Southern Mono Healthcare District* (Oct. 2009), pp.7-8, https://monocounty.ca.gov/sites/default/files/fileattachments/local_agency _formation_commission_lafco/page/3562/southernmonohospitaldistrictoctober2009_000. pdf (hereafter, *Municipal Service Review*).  For purposes of general application of the Government Code, an incorporated town is a "city."  (Gov. Code, § 20.)  An *unincorporated* city or village is not a "city."  (Gov. Code, § 21.)

[4] Gov. Code, §§ 34102, 36501, subd. (a); see https://townofmammothlakes.ca.gov/82/ Town-Council.

[5] Mammoth Lakes Mun. Code, §§ 2.04.060, 2.28.010, 2.32.010.

[6] 68 Ops.Cal.Atty.Gen. 337, 339 (1985); accord, 93 Ops.Cal.Atty.Gen. 104, 108 (2010); 87 Ops.Cal.Atty.Gen. 153, 154 (2004); see also *Mott v. Horstmann* (1950) 36 Cal.2d 388, 391 (doctrine applies where the functions of the offices concerned are inherently inconsistent); accord, *Eldridge v. Sierra View Local Hospital Dist.* (1990) 224 Cal.App.3d 311, 319 (1990) (*Eldridge*).

public policy which demand that a public officer discharge his or her duties with undivided loyalty."[7]

In 2005, the Legislature codified the common law doctrine of incompatible offices by enacting Government Code section 1099. That section provides, in relevant part:

(a) A public officer, including, but not limited to, an appointed or elected member of a governmental board, commission, committee, or other body, shall not simultaneously hold two public offices that are incompatible. Offices are incompatible when any of the following circumstances are present, unless simultaneous holding of the particular offices is compelled or expressly authorized by law:

(1) Either of the offices may audit, overrule, remove members of, dismiss employees of, or exercise supervisory powers over the other office or body.

(2) Based on the powers and jurisdiction of the offices, there is a possibility of a significant clash of duties or loyalties between the offices.

(3) Public policy considerations make it improper for one person to hold both offices.

* * * *

(c) This section does not apply to a position of employment, including a civil service position.

(d) This section shall not apply to a governmental body that has only advisory powers.

* * * *

(f) This section codifies the common law rule prohibiting an individual from holding incompatible public offices.[8]

---

[7] 68 Ops.Cal.Atty.Gen., *supra*, at p. 339; 63 Ops.Cal.Atty.Gen. 623, 625 (1980); 17 Ops.Cal.Atty.Gen. 129, 130 (1951).

[8] Gov. Code, § 1099, added by Stats. 2005, ch. 254, § 1.

3

In an uncodified section of the bill that enacted Government Code section 1099, the Legislature declared: "Nothing in this act is intended to expand or contract the common law rule prohibiting an individual from holding incompatible public offices. It is intended that courts interpreting this act shall be guided by judicial and administrative precedent concerning incompatible public offices developed under the common law."[9] Accordingly, in conducting our analysis, we look both to Government Code section 1099 and to precedent established under the common law.

**Are the governmental positions at issue "public offices"?**

The doctrine of incompatible offices applies only to public offices, and not to positions of employment.[10] We have previously characterized a public office, for purposes of the doctrine, as "a position in government (1) which is created or authorized by the Constitution or some law; (2) the tenure of which is continuing and permanent, not occasional or temporary;[11] (3) in which the incumbent performs a public function for the public benefit and exercises some of the sovereign powers of the state."[12]

Under Government Code section 1099, subdivision (a), "public office" expressly includes membership on a governmental board or body.[13] There can be little doubt, and we have previously concluded on numerous occasions, that a member of a city council holds a public office.[14]

---

[9] Stats. 2005, ch. 254, § 2.

[10] Gov. Code, § 1099, subds. (a), (c); *People ex rel. Chapman v. Rapsey* (1940) 16 Cal.2d 636, 639-640 (*Rapsey*); *Eldridge, supra*, 224 Cal.App.3d at p. 319 (doctrine does not apply where one position is a public office and the other an employment).

[11] Although an office must have some permanence and continuity, "these terms do not refer to the tenure of the appointed officer, but apply to the permanency and continuity of the office itself." (*Cerini v. City of Cloverdale* (1987) 191 Cal.App.3d 1471, 1478.)

[12] 68 Ops.Cal.Atty.Gen., *supra*, at p. 342; accord, 95 Ops.Cal.Atty.Gen. 77, 78 (2012); 93 Ops.Cal.Atty.Gen. 144, 148 (2010); 93 Ops.Cal.Atty.Gen., *supra*, at p. 105; 82 Ops.Cal.Atty.Gen. 83, 84 (1999); 74 Ops.Cal.Atty.Gen. 116, 118 (1991); see also *Moore v. Panish* (1982) 32 Cal.3d 535, 545.

[13] See also 68 Ops.Cal.Atty.Gen., *supra*, at p. 344 (citing cases decided under the common law doctrine declaring that members of governing boards of public districts or entities are public officers).

[14] See, e.g., 98 Ops.Cal.Atty.Gen. 94, 96 (2015); 91 Ops.Cal.Atty.Gen. 25, 26 (2008);

4

Likewise, we have previously concluded that a member of the board of directors of a hospital district holds a public office.[15] A local health care district is governed by a board of directors typically consisting of five members, who are elected to four-year terms[16] The position of director of a health care district is created by statute, and is one in which incumbents succeed one another.[17] The board of directors exercises powers of sovereignty,[18] and must "make and enforce all rules, regulations and bylaws necessary for the administration, government, protection and maintenance of health care facilities under their management and all property belonging thereto . . . ."[19]

We have also previously concluded that a member of a city planning commission holds a public office for purposes of Government Code section 1099.[20] The City's Planning Commission is created by statute.[21] It comprises five members, "all of whom shall act in the public interest."[22] Members of the Planning Commission serve four-year terms.[23] The Planning Commission exercises "all of those functions and duties of a planning commission and board of zoning adjustment as provided in Chapters 3 and 4 of

---

85 Ops.Cal.Atty.Gen. 199, 200 (2002); 82 Ops.Cal.Atty.Gen. 74, 76 (1999); 76 Ops.Cal.Atty.Gen. 38, 40 (1993); 75 Ops.Cal.Atty.Gen. 10, 13 (1992); 37 Ops.Cal.Atty.Gen. 21, 22, fn. 1 (1961).

[15] 95 Ops.Cal.Atty.Gen., *supra*, at p. 78.

[16] Health & Saf. Code, § 32100.

[17] Health & Saf. Code, § 32100.02.

[18] Health & Saf. Code, § 32121 (control property, manage officers and employees, engage in joint ventures, etc.); see *Sutter Health v. Eden Township Healthcare Dist.* (2016) 6 Cal.App.5th 60, 63-64 (describing healthcare district as a public agency); *Talley v. Northern San Diego County Hosp. Dist.* (1953) 41 Cal.2d 33 (a hospital district exercises governmental functions), overruled on other grounds, *Muskopf v. Corning Hosp. Dist.* (1961) 55 Cal.2d 211 (repudiating judicial doctrine of sovereign immunity).

[19] Health & Saf. Code, § 32125, subd. (a).

[20] 95 Ops.Cal.Atty.Gen. 67, 70 (2012); 84 Ops.Cal.Atty.Gen. 91 (2001); 82 Ops.Cal.Atty.Gen. 68 (1999); 79 Ops.Cal.Atty.Gen. 155 (1996); see also 66 Ops.Cal.Atty.Gen. 293, 296 (1983) (treating member of city planning commission as public office).

[21] Gov. Code, § 65100.

[22] Gov. Code, § 65101, subd. (a).

[23] Mammoth Lakes Mun. Code, §§ 2.32.010, 2.28.010, ¶ A.

5

Title 7 commencing with Section 65100 of the Government Code."[24]  These duties include "preparation, maintenance, and implementation of the town's General Plan."[25]  Although the Planning Commission "acts as an advisory body to the Town Council on all planning and development policy issues,"[26] the Planning Commission is also "the decision-making body for many land-use related proposals including use permits, variances, and subdivisions."[27]  Under the City's ordinance, the Planning Commission "shall conduct public hearings and approve or deny applications for Use Permits, Tentative Maps, and Variances."[28]  We are satisfied that a member of the City's Planning Commission holds a public office within the meaning of Government Code section 1099: it is created by statute, the tenure is continuing and permanent, and the incumbent performs a public function for the public benefit and exercises some of the sovereign powers of the state.

Thus, we readily conclude that the offices at issue here are all "public offices" within the meaning of Government Code section 1099, and for purposes of our analysis.

**Does a District director's concurrent holding of either City Council or Planning Commission member amount to impermissible incompatibility?**

We conclude that a District director may not concurrently serve on either the city council or on the city planning commission.  An individual may not simultaneously hold two public offices if either office exercises a supervisory, auditing, or removal or veto power over the other; if there is any significant clash of duties or loyalties between the offices; or if the dual office holding would be improper for reasons of public policy.[29]

Long ago we noted that "when the chances of each agency *dealing* with the other are substantial, the two offices are incompatible."[30]  It is well established that a "past or present conflict in the performance of the duties of either office is not required for a finding

---

[24] Mammoth Lakes Mun. Code, §§ 2.32.040.

[25] Mammoth Lakes Planning and Economic Development Commission, "Overview," https://www.ci.mammoth-lakes.ca.us/90/Planning-and-Economic-Development-Commis.

[26] *Ibid.*

[27] *Ibid.*; see Gov. Code, § 1099, subd. (d) (statute inapplicable to governmental body that "has only advisory powers").

[28] Mammoth Lakes Mun. Code, § 17.96.030, subd. B.1.

[29] Gov. Code, § 1099, subd. (a); *Rapsey*, *supra*, 16 Cal.2d at p. 642; 90 Ops.Cal.Atty.Gen. 24, 26 (2007).

[30] 41 Ops.Cal.Atty.Gen. 98, 99 (1963) (emphasis added).

of incompatibility; rather, it is sufficient that a conflict may occur "'in the regular operation of the statutory plan.'"[31]  Nor is it necessary that the clash of duty exist in all or in the greater part of the official functions; it is enough when the holder of the two offices cannot in every instance discharge the duties of each.[32]  Thus, only "one potential significant clash of duties or loyalties is necessary to make offices incompatible."[33]  Abstention when a conflict arises does not cure the incompatibility or obviate the effects of the doctrine.[34]

The term "significant" is not defined in section 1099.  In such a circumstance, applying traditionally accepted rules of statutory construction, we give words their ordinary meaning.[35]  Accordingly, we have construed the term to mean a clash that is not trivial and is more certain than mere chance.[36]

Both healthcare districts and municipalities are empowered to condemn property by eminent domain.[37]  Both entities could seek to acquire the same property or the property of the other based on an asserted higher public use.[38]  We have previously found this potential

---

[31] 87 Ops.Cal.Atty.Gen. 142, 145 (2004), quoting 66 Ops.Cal.Atty.Gen. 176, 177 (1983); accord, 87 Ops.Cal.Atty.Gen., *supra*, at p. 154; 75 Ops.Cal.Atty.Gen. 112, 116 (1992) (lack of actual disputes or negotiations between two public entities immaterial to application of doctrine); 63 Ops.Cal.Atty.Gen., *supra*, at p. 624 (absence of significant interactions between city and airport district not determinative; potential interaction sufficient to render offices incompatible).  The incompatible offices prohibition "does not await the occurrence of an actual clash before taking effect, but intercedes to prevent it." (93 Ops.Cal.Atty.Gen. 110, 111 (2010).)

[32] *Rapsey*, *supra*, 16 Cal.2d at pp. 641, 642.

[33] 85 Ops.Cal.Atty.Gen. 60, 61 (2002); 37 Ops.Cal.Atty.Gen., *supra*, at p. 22.

[34] 85 Ops.Cal.Atty.Gen. 239, 240 (2001); 66 Ops.Cal.Atty.Gen., *supra*, at pp. 177-178; 63 Ops.Cal.Atty.Gen. 710, 715-716 (1980).

[35] See, e.g., *Outfitter Properties, LLC v. Wildlife Conservation Bd.* (2012) 207 Cal.App.4th 237, 244; *In re Eureka Reporter* (2008) 165 Cal.App.4th 891, 897; 64 Ops.Cal.Atty.Gen. 905, 908 (1981); 60 Ops.Cal.Atty.Gen. 4, 7 (1977).

[36] 93 Ops. Cal. Atty. Gen., *supra*, at p. 108.

[37] Gov. Code, § 37350.5; Health & Saf. Code, § 32121, subd. (d); see, e.g., *Medical Acquisition Co., Inc. v. Superior Court (Tri-City Healthcare District)* (2018) 19 Cal.App.5th 313 (healthcare district condemnation); *Sierra View Local Health Care Dist. v. Sierra View Medical Plaza Associates, LP* (2005) 126 Cal.App.4th 478 (same).

[38] Code Civ. Proc., §§ 1240.610, 1240.660.  We note that a dispute between a city and a hospital district involving the power of eminent domain arose in a matter underlying the

7

conflict to render incompatible the simultaneous holding of the office of city councilmember and school district board member.[39]  We think a similar conclusion is compelled here.

The District and the City are also contracting parties regarding the provision of medical services to city government.  The District is a major provider of medical and acute care services in Mammoth Lakes.[40]  We are told that the City contracts with the District for all pre-employment physicals, annual DMV physicals, and drug and alcohol tests.  We are also told that the City and the District, together with Mono County and the Administrative Office of the Courts, collectively own a parcel of land located within the City, which they jointly administer pursuant to a memorandum of understanding.  The contractual relationship between the District and the City poses a significant potential for conflicting interests or loyalties.[41]

Planning commissions can regulate zoning and construction of local agencies such as a healthcare district.[42]  The City's Planning Commission issues land use permits and approvals, as well as building permits, for development within the city, including development by the District.[43]  The potential for conflict over land-use decisions is an

---

unpublished opinion in *City of Palmdale v. Bd. of Directors of Antelope Valley Healthcare Dist.* (No. B195219, Jan. 25, 2008) 2008 WL 204215 (*City of Palmdale*).  We are mindful of Rule 8.1115 of the California Rules of Court, prohibiting reliance on unpublished opinions "by a court or party in any other action."  By its terms, the rule does not limit citations in our opinions.  In any event, we mention *City of Palmdale,* not as support for a proposition of law but as a judicial record evidencing a property dispute between a city and a hospital district.  (Cf. *People v. Hill* (1998) 17 Cal.4th 800, 847, fn. 9).

[39] 73 Ops.Cal.Atty.Gen. 354, 356-357 (1990); 48 Ops.Cal.Atty.Gen. 141, 143 (1966); 65 Ops.Cal.Atty.Gen. 606 (1982).

[40] See, e.g., Municipal Service Review*, ante,* note 3.

[41] See, e.g., 80 Ops.Cal.Atty.Gen. 74, 77 (1997) (simultaneous occupancy of offices of city manager and school board trustee); 73 Ops.Cal.Atty.Gen. 183, 187 (1990) (simultaneous occupancy of school and community services district boards); cf. *People ex rel. Smith v. Brown* (Ill. App. 2005) 828 N.E.2d 306, 309 (incompatibility resulting from potential conflict over jointly owned real property).

[42] Gov. Code, § 53090 et seq.; Mammoth Lakes Mun. Code, §§ 17.040.60.

[43] Mammoth Lakes Mun. Code, § 17.96.030, subd. B.1; Gov. Code, §§ 53091, subd. (a) (local agencies "shall comply with all applicable building ordinances and zoning ordinances of the county or city in which the territory of the local agency is situated"), 65103, subd. (b) (implementation of general plan); see also Mammoth Lakes Mun. Code,

8

indicator of incompatibility.[44]

The Legislature may provide exceptions to the general prohibition against simultaneous occupancy of incompatible offices.[45] And, indeed, the Legislature has done so in other contexts.[46] No such exception exists here, however. We therefore conclude that a member of the Southern Mono Healthcare District board of directors may not simultaneously serve as a member of the city council for the Town of Mammoth Lakes or on the Mammoth Lakes Planning and Economic Development Commission.

\* \* \* \* \*

§§ 2.32.040 (functions, powers, and duties of Planning Commission).

[44] See, e.g., *City of Palmdale*, *supra*, 2008 WL 204215; 95 Ops.Cal.Atty.Gen., *supra,* at p. 72 (simultaneous occupancy of city planning commission and sanitary district board); 84 Ops.Cal.Atty.Gen. 91 (2001) (simultaneous occupancy of city planning commission and school district board); 64 Ops.Cal.Atty.Gen. 288 (1981) (simultaneous occupancy of county planning commission and county water district board); see also 58 Ops.Cal.Atty.Gen. 323, 326 (1975) (incompatibility of simultaneous occupancy of county planning commission and hospital district boards).

[45] By its terms, Government Code section 1099 prohibits the concurrent holding of incompatible offices "unless simultaneous holding of the particular offices is . . . expressly authorized by law." (Gov. Code, § 1099, subd. (a).)

[46] See, e.g., Water Code App., ch. 109, § 56 (West); Stats. 1969, ch. 441, § 13 (constituent water agency may select one or more members of its governing board to serve on Metropolitan Water District board of directors).

17-903